**PUBLIC UTILITY COMMISSIONER OF OREGON, Pacific Power & Light Company, Portland General Electric Company, and CP National Corporation, Petitioners-Appellants,**

v.

**BONNEVILLE POWER ADMINISTRATION, and Peter T. Johnson, Administrator, Bonneville Power Administration, Respondents-Appellees,**

and

**Aluminum Company of America, et al., Intervenors.**

Nos. 84–3722, 84–7185.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 14, 1984.

Decided Aug. 1, 1985.

As Amended Sept. 5, 1985.

Marcus Wood, Guy A. Randles, Pamela J. Jacklin, Stoel, Rives, Boley, Fraser & Wyse, Portland, Or., Paul A. Graham, Asst. Atty. Gen., Salem, Or., Alvin Alexanderson, Portland General Electric Co., Portland, Or., for petitioners-appellants.

Charles H. Turner, U.S. Atty., Jack G. Collins, Thomas C. Lee, David J. Adler, John A. Cameron, Jr., Portland, Or., M. Laurence Popofsky, Peter A. Wald, Dian M. Grueneich, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for respondents-appellees.

Before KENNEDY, ALARCON, and FERGUSON, Circuit Judges.

KENNEDY, Circuit Judge:

The principal issue in these consolidated cases is whether, under the judicial review provisions of the Pacific Northwest Electric Power Planning and Conservation Act, 16 U.S.C. § 839, *et seq.* (1982) (the Act), jurisdiction of suits which challenge ongoing agency proceedings on constitutional grounds is solely in the district court, concurrently in the district court and the court of appeals, or exclusively in the court of appeals. A secondary issue is whether we should exercise our own jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a) (1982), to review alleged bias in agency proceedings which have not yet concluded. We conclude that section 9(e)(5) of the Act, 16 U.S.C. § 839f(e)(5) (1982), coupled with the All Writs Act, affords this court exclusive jurisdiction to determine the claims made by petitioners, and that we will not exercise our jurisdiction to do so pending final agency action.

Petitioners, the Public Utility Commissioner of Oregon (Oregon PUC), and three investor-owned utilities (IOU's) sued the Bonneville Power Administration (BPA) in the district court, challenging the constitutionality of ongoing agency proceedings. Petitioners alleged proceedings to revise certain rate formulas were initiated by BPA Administrator Peter Johnson with an unalterably closed mind as to the outcome, and that his participation in the proceedings violated their Fifth Amendment right to due process. The district court dismissed the action for lack of subject matter jurisdiction. *Public Utility Commissioner of Oregon v. Bonneville Power Administration,* 583 F.Supp. 752 (D.Or.1984). Petitioners appealed from the district court dismissal and filed an original action in this court raising claims identical to those raised in the district court. The appeal and the original action have been consolidated for decision in order to resolve the jurisdictional issues.

We affirm the dismissal of the suit in the district court. As to the action commenced in this court, we lack subject matter jurisdiction under the Act as there is no final agency action, and decline to review petitioner's challenge by way of mandamus under the All Writs Act, 28 U.S.C. § 1651(a).

To understand the issues posed by the parties in this case, a brief look at the operation of the Act and the administrative proceedings surrounding this litigation is necessary. One of the goals of the Act is to ensure that residential consumers served by Northwest IOU's have wholesale rate parity with residential consumers served by publicly owned utilities and public cooperatives, BPA's preference customers. Parity is to be achieved through Residential Purchase and Sale Agreements between BPA and IOU's. Under a residential agreement, IOU's exchange their own higher priced power at its "average system cost" (ASC) for an equivalent amount of lower cost BPA power. The agreement involves bookkeeping entries only; BPA makes a payment to the IOU for the difference between the IOU's ASC and BPA's preference rate. The Act re-

quires the IOU's to pass the savings on to their customers. 16 U.S.C. § 839c(c)(3) (1982).

BPA is to recoup its losses resulting from residential agreements, i.e., the price differential between the IOU's ASC and BPA's preference rate, primarily by charging higher rates to its direct service industrial customers (DSI's) until July 1, 1985. After that time, other BPA customers may bear a greater portion of the costs of the exchange. *See* 16 U.S.C. § 839e(c)(1)(B); 16 U.S.C. § 839e(c)(1)(A) (1982). The DSI's have a particularly strong interest in how the IOU's ASC was computed for the contract year July 1, 1984 to June 30, 1985, since the rates they pay for power during that contract year establish a floor for all future rates paid by DSI's. *See* 16 U.S.C. § 839e(c)(2) (1982).

The Act provides that the ASC shall be determined on the basis of a methodology developed by the BPA Administrator in consultation with the Pacific Northwest Electric Power and Conservation Planning Council, BPA's customers, and regional state regulatory bodies. 16 U.S.C. § 839c(c)(7) (1982). Before the ASC methodology is implemented, it must be approved and confirmed by the Federal Energy Regulatory Commission (FERC). *See* 18 C.F.R. § 35.13(a) (1984).

BPA first adopted a methodology for computing the ASC in August 1981. After interim approval and formal administrative proceedings, FERC gave final approval to the methodology in September 1983. At the request of the DSI's, BPA initiated a new ASC consultation in October 1983. The DSI's and BPA believed the then current ASC methodology failed to exclude IOU costs required to be excluded by the Act, 16 U.S.C. § 839c(c)(7), resulting in DSI rates that were unlawfully high. After providing for considerable public participation, BPA published a proposed ASC methodology. On February 3, 1984, while public consultation sessions were still being conducted, petitioners filed suit in the district court alleging that Johnson's participation in the ASC methodology proceed-

ings denied them due process because Johnson was "absolutely committed" to lowering the ASC calculation, thereby reducing payments to exchanging utilities under the residential agreements. Petitioners sought to have Johnson and his subordinates enjoined from participating in the ASC methodology consultation and asked the district court to delegate decisional authority to an independent hearing officer.

On June 5, 1984, while this litigation was pending, BPA adopted and submitted the revised ASC methodology to FERC with a request for interim approval by July 1, 1984. Although the Commission decided not to grant interim approval, it issued a final order approving and implementing the revised ASC methodology as submitted by BPA on October 1, 1984. These events have rendered moot petitioner's original request for injunctive relief. However, since BPA will undertake to make further revisions to the ASC methodology, this interlocutory challenge to allegedly biased proceedings is capable of repetition, yet evading review. *See Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam); *California Energy Resources Conservation and Development Commission v. Bonneville Power Administration,* 754 F.2d 1470, 1473 (9th Cir.1985); *NAACP Western Region v. City of Richmond,* 743 F.2d 1346, 1352–53 (9th Cir.1984); *Planned Parenthood v. Arizona,* 718 F.2d 938, 949–50 (9th Cir.1983). The underlying jurisdictional issue thus remains, and resolution by this court is appropriate.

The district court concluded jurisdiction to consider petitioner's interlocutory challenge to BPA's rulemaking proceedings lies with the court of appeals, not the district court. The court did not squarely hold that the Ninth Circuit had jurisdiction under the Act's jurisdictional provision, but only that the remedy, if any, is in the Ninth Circuit. 583 F.Supp. at 756.

Section 9(e)(5) of the Act, which provides for judicial review, states:

Suits to challenge the constitutionality of this chapter, or any action thereunder,

final actions and decisions taken pursuant to this chapter by the Administrator or the [Northwest Power Planning] Council, or the implementation of such final actions ... shall be filed in the United States court of appeals for the region. Such suits shall be filed within ninety days of the time of such action or decision is deemed final.... Suits challenging any other actions under this chapter shall be filed in the appropriate court.

16 U.S.C. § 839f(e)(5).

In two previous cases, we have held that suits to challenge final actions must, under the Act, be brought in the court of appeals. *Forelaws on Board v. Johnson*, 709 F.2d 1310, 1313 (9th Cir.1983); *Central Lincoln Peoples' Utility District v. Johnson*, 686 F.2d 708, 710 (9th Cir.1982) (*Central Lincoln I*), *rev'd on other grounds sub nom., Aluminum Company of America v. Central Lincoln People's Utility District,* — U.S. ——, 104 S.Ct. 2472, 81 L.Ed.2d 301 (1983). However, unlike *Forelaws* and *Central Lincoln I*, where certain power contracts offered by BPA were challenged, this suit involves a constitutional challenge to BPA's proceedings. For this reason, petitioners' first contention is that the Act's jurisdictional section is simply inapplicable to their suit, and that the district court has jurisdiction under 28 U.S.C. § 1331. In essence, petitioners seek to evade the first sentence which requires suits challenging the constitutionality of actions be brought in the court of appeals, by arguing they are not challenging an "action," but rather a proceeding. To support their argument, petitioners point to the savings clause in the last sentence of the provision as evidence that Congress did not intend to vest the court of appeals with exclusive jurisdiction over all suits against BPA.

While it would seem that petitioners seek to draw the scope of the term "action" too narrowly, *see Federal Trade Commission v. Standard Oil Co. of California*, 449 U.S. 232, 238–39 n. 7, 101 S.Ct. 488, 492 n. 7, 66 L.Ed.2d 416 (1980); *Carter/Mon-*

*dale Presidential Committee, Inc. v. Federal Election Commission*, 711 F.2d 279, 284 n. 8 (D.C.Cir.1983), we need not determine whether the ASC methodology rulemaking proceeding constitutes an "action" within the statutory context. We hold, as did the District of Columbia Circuit in *Telecommunications Research and Action Center ("TRAC") v. FCC*, 750 F.2d 70 (D.C.Cir.1984), and *Air Line Pilots Association, International ("ALPA") v. CAB*, 750 F.2d 81 (D.C.Cir.1984), that where a statute commits review of final agency action to the court of appeals, any suit seeking relief that might affect the court's future jurisdiction is subject to its exclusive review.

The plaintiffs in *TRAC* filed a petition alleging unreasonable delay and seeking a writ of mandamus to compel action by the Federal Communications Commission. The plaintiffs in *ALPA* brought an action against the Civil Aeronautics Board complaining of unreasonably delayed agency action and bias on the part of CAB's Chairman in ongoing administrative proceedings. Addressing the jurisdictional issue raised by those companion cases, the court held that the claims of unreasonable delay and bias were subject to the exclusive review of the court of appeals because the resolution of those claims could affect the court's future jurisdiction over final agency action. *TRAC*, 750 F.2d at 75; *ALPA*, 750 F.2d at 84. The basis of the court's holding was the exclusive jursdiction given to the court of appeals over review of final FCC and CAB action, 28 U.S.C. § 2342(1) (1982), 47 U.S.C. § 402(a) (1982), 49 U.S.C.App. § 1486(a) (1982), in conjunction with the All Writs Act, 28 U.S.C. § 1651(a), which empowers a federal court to issue writs of mandamus necessary to protect its prospective jurisdiction. 750 F.2d at 76; 750 F.2d at 84.

In the case before us, section 9(e)(5) does not expressly state that jurisdiction in the court of appeals is exclusive, as do the statutory provisions governing review of FCC and CAB orders. This distinction, however, does not alter our conclusion that

the District of Columbia Circuit cases are on point here. As the disposition of petitioners' claim of bias could affect our future statutory review authority, we have exclusive jurisdiction to consider it. As the *TRAC* court noted, 750 F.2d at 77, jurisdiction over a specific class of claims which Congress has committed to the court of appeals generally is exclusive, even in the absence of an express statutory command of exclusiveness. *Central Lincoln Peoples Utility District v. Johnson,* 735 F.2d 1101, 1109 (9th Cir.1984) (*Central Lincoln II*); *Assure Competitive Transportation, Inc. v. United States,* 629 F.2d 467, 470–72 (7th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981); *Nevada Airlines, Inc. v. Bond,* 622 F.2d 1017, 1020 (9th Cir.1980); *City of Rochester v. Bond,* 603 F.2d 927, 935 (D.C.Cir.1979); *UMC Industries, Inc. v. Seaborg,* 439 F.2d 953, 955 (9th Cir.1971).

The Administrative Procedure Act provides additional support for our conclusion that special statutory schemes of review, such as section 9(e)(5) of the Act, are the sole means of obtaining judicial review for those classes of claims covered by the statute. The APA provides that review must be had pursuant to "the special statutory review proceeding relevant to the subject matter in a court specified by statute," in this case the court of appeals, unless such review is inadequate. 5 U.S.C. § 703 (1982). There is no reason to believe appellate review will be inadequate. *See FCC v. ITT World Communications, Inc.,* 466 U.S. 463, 104 S.Ct. 1936, 1940, 80 L.Ed.2d 480 (1984).

■ We further reject petitioners' contention that the Administrative Procedure Act provides a separate basis for district court jurisdiction. Petitioners argue that the district court retains jurisdiction to consider the statutory APA claim, even if it lacks jurisdiction over their constitutional claim. Petitioners' only explanation of the so-called statutory claim is that "[t]he APA guarantees plaintiffs a fundamentally fair rulemaking process. 5 U.S.C. § 551 *et seq.*". This argument, though, is in es-

sence the same as petitioners' constitutional one, namely, that BPA's administrative proceedings deprive them of due process. Petitioners may not avoid section 9(e)(5)'s mandate of exclusive Ninth Circuit jurisdiction by alleging a separate statutory APA claim. It is now settled that the APA does not provide an independent fount of jurisdiction to review agency action. *Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977); *McCartin v. Norton,* 674 F.2d 1317, 1319 (9th Cir.1982); *Glacier Park Foundation v. Watt,* 663 F.2d 882, 885 (9th Cir.1982); *Amusement and Music Operators Ass'n v. Copyright Royalty Tribunal,* 636 F.2d 531, 534 (D.C. Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1352, 67 L.Ed.2d 336 (1981). Jurisdiction must come from a source other than the APA.

■ Sound policy considerations further support our conclusion that by assigning jurisdiction over constitutional challenges to the court of appeals, section 9(e)(5) preempts district court jurisdiction under the general federal question statute, 28 U.S.C. § 1331. The Supreme Court recently noted the strong preference for reviewing all preliminary or ancillary issues in a proceeding in the forum provided for the final agency order or action. *Florida Power & Light Co. v. Lorion,* —— U.S. ——, ——, 105 S.Ct. 1598, 1606, 84 L.Ed.2d 643 (1985). Our own precedents are in accord. Jurisdiction by the district court in this instance would create the bifurcated system of review that we criticized in *Forelaws on Board v. Johnson,* 709 F.2d 1310, 1313 (9th Cir.1983). In *Forelaws* we held that the district court lacked jurisdiction to review a challenge to final BPA action under the National Environmental Policy Act when the court of appeals had original jurisdiction over a challenge to the same final BPA action under the Act. Bifurcation would have resulted in duplicative effort, confusion, and potential for conflicting results. *Id.* Even though in this case we have the potential for jurisdiction, under the All Writs Act, 28 U.S.C. § 1651(a), the rationale of *Forelaws* applies

with equal force. Petitioners initially filed suit alleging in the district court denial of due process while the ASC methodology consultation was ongoing. When FERC gave final approval to the revised ASC methodology seven months later, we obtained statutory jurisdiction over petitioners' challenge. The likelihood of delay, duplication, and inconsistency resulting from the additional level of possible simultaneous judicial review is exactly what we criticized in *Forelaws*. *See TARC*, 750 F.2d at 78; *City of Rochester*, 603 F.2d at 936. For all the foregoing reasons, we conclude that our jurisdiction over claims that may affect our future statutory review authority under section 9(e)(5), such as the instant bias claim, is exclusive.

■ Petitioners' original suit in this court requires us to address the question left open in *Central Lincoln II*, 735 F.2d at 1110, that is, whether the Act grants us jurisdiction to review a constitutional challenge to nonfinal agency action. There is no contention here that BPA or FERC had taken any "final action" concerning the ASC methodology when the present lawsuit was filed. However, the IOU's and DSI's urge us to interpret the Act expansively, so that it permits constitutional challenges even if the question would ultimately arise on review of final agency action. Apparently, they would maintain that every procedural, preliminary, or otherwise nonfinal BPA action is subject to immediate review in the court of appeals so long as the challenge is on constitutional grounds. By contrast, the BPA urges us to interpret the provision for review of a constitutional challenge to "any action" as permitting review of final BPA actions only.

On its face, section 9(e)(5) makes reference to suits challenging the constitutionality of the Northwest Power Act or any "action" thereunder, suits challenging final actions and decisions taken under the Act by BPA's Administrator or the Northwest Power Planning Council, and suits challenging the implementation of final actions. The jurisdictional provision is clear in pro-

viding the court of appeals with original jurisdiction to review only "final" BPA actions when the challenge is on other than constitutional grounds. When the challenge is on constitutional grounds, the statute is ambiguous as to whether the action must be final to warrant original review by this court. Consequently, we interpret the statute according to probable congressional purpose. *See Forelaws on Board, supra,* 709 F.2d at 1312. We conclude that both the text of section 9(e)(5) and the general scheme of the Act, when read in light of the relevant case law, reveals Congress' intent to limit judicial review of constitutional challenges to final agency action.

Although the provision for review of a constitutional challenge to "any action thereunder" in the first clause of section 9(e)(5) seemingly confers broad jurisdiction on the courts of appeals, this phrase takes on a narrower meaning when viewed in the context of section 9(e) in its entirety. First, the second sentence of section 9(e)(5), which states *"[s]uch suits* shall be filed within ninety days of the time such action or decision is *deemed final ..."* (emphasis added) creates a ninety-day statute of limitations for suits specified in the first sentence. By beginning with the words "such suits," the statute of limitations provision necessarily refers back to all suits; the finality requirement of this provision, in our view, refers back to all suits as well. We conclude that Congress did not intend to split this provision, applying the finality requirement to some actions and not to others, depending on the substantive infirmity alleged. Were the finality requirement not to apply to constitutional challenges such as the instant one, it is unclear when the ninety-day statute of limitations would commence. Without clear direction from Congress, we refuse to construe section 9(e)(5) in a manner that would create such confusion and uncertainty. *See Forelaws on Board v. Johnson,* 743 F.2d 677, 680 (9th Cir.1985); *cf. Lorion,* —— U.S. at ——, 105 S.Ct. at 1606.

The scheme of the Act provides additional support for our conclusion that finality is

required. Congress created a specific administrative process for development of the ASC methodology, ensuring that administrative review precedes judicial review. The process involves development of a proposed methodology by the BPA Administrator in consultation with the Pacific Northwest Electric Power and Conservation Planning Council, BPA's customers, and regional state regulatory bodies, and then confirmation and approval by FERC. 16 U.S.C. § 839c(c)(7). Once these steps are taken, a final action subject to judicial review has occurred.

The absence of an express finality prerequisite in statutes providing for appellate review of administrative actions, such as the Act, does not prevent the implication of such a requirement. Courts commonly attribute a finality requirement to statutes that simply provide for review of administrative orders and actions in order to avoid the disruption, delay, and piecemeal review that accompany interference with pending administrative proceedings. *Bell v. New Jersey*, 461 U.S. 773, 103 S.Ct. 2187, 2190–91, 76 L.Ed.2d 313 (1983); *Papago Tribal Utility Authority v. F.E.R.C.*, 628 F.2d 235, 238 (D.C.Cir.), *cert. denied*, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980); *Rosenthal & Co. v. Commodity Futures Trading Commission*, 614 F.2d 1121, 1125 (7th Cir.1980); 16 C. Wright, A. Miller, E. Cooper, & E. Gressman, Federal Practice and Procedure § 3942 at 310–11 (1977); *see FPC v. Metropolitan Edison Co.*, 304 U.S. 375, 383–85, 58 S.Ct. 963, 966–67, 82 L.Ed. 1408 (1938).

Petitioners' argument that finality should not be required where the challenge is on constitutional grounds because the statutory review procedure in such cases is inadequate is unpersuasive. Although FERC will not review the conduct of the BPA's Administrator, 49 Fed.Reg. 39,293 (1984), it does, of course, review the ASC methodology itself. If FERC fails to correct any defects in the methodology, redress is available in the court of appeals on that ground. Further, petitioners may challenge the action adopting the methodology on the ground that it is defective for

reasons of disqualification of the BPA Administrator. *See Association of National Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1178 (D.C.Cir.1979) (Leventhal, J., concurring), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980); *Central Lincoln II*, 735 F.2d at 1116–20.

If, upon review of the final action approving and implementing the ASC methodology, and in the context of a constitutional challenge to the validity of the agency proceeding as a whole, the agency record is insufficient, we can remand the record to the agency for further development, appoint a special master under 28 U.S.C. § 2347(b)(3), or accommodate any additional discovery needs. *ITT World Communications*, 104 S.Ct. at 1940; *Public Power Council v. Johnson*, 674 F.2d 791, 793–94 (9th Cir.1982); *Pacific Power & Light Co. v. Bonneville Power Administration*, 589 F.Supp. 539, 547 n. 7 (D.Or.1984), *appeal pending*, No. 84–4072. At that time, the issue of bias along with any other cognizable challenges will be fully reviewable and the entire ASC methodology subject to vacation if necessary. *See Association of National Advertisers*, 627 F.2d at 1178 (Leventhal, J., concurring); *San Luis Obispo Mothers for Peace v. Hendrie*, 502 F.Supp. 408, 411 (D.D.C.1981); 5 U.S.C. § 704 ("A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.").

Our decision is entirely consistent with the general presumption in favor of postponing review until the conclusion of agency proceedings. This presumption is based on the general doctrine of ripeness, *Friends of Hop Marketing Order v. Block*, 753 F.2d 777, 778 (9th Cir.1985) (per curiam), and the doctrine of exhaustion. *McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969). Refusing intervention in current agency proceedings ensures against premature, possibly unnecessary, and piecemeal judicial review. Thus, postponing review until final agency action is the most efficient means of review, avoiding

disruption of the administrative process and delay of the ultimate resolution of agency proceedings. *FTC v. Standard Oil Co.*, 449 U.S. 232, 242, 101 S.Ct. 488, 494, 66 L.Ed.2d 416 (1980); *Abbott Laboratories, Inc. v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *Rosenthal & Co.*, 614 F.2d at 1126.

Our conclusion that action taken by an agency, even though it implicates constitutional issues, must be final agency action before it is reviewable in the court of appeals does not end our inquiry, for we must determine whether special circumstances in the case warrant exception. Though there is a possibility that in an extreme case an action is challengeable by suit on constitutional grounds before it is final, these cases no doubt would be reviewable by extraordinary writ with jurisdiction predicated on the All Writs Act, 28 U.S.C. § 1651. The jurisdictional basis for interlocutory review of any nonfinal BPA action is our inherent power of mandamus to preserve prospective jurisdiction. As a consequence, such jurisdiction would not lie in the district court, but in the court of appeals, the court with ultimate authority to review final agency action. *TRAC*, 750 F.2d at 77; *Association of National Advertisers*, 627 F.2d at 1179 (Leventhal, J., concurring). *Accord San Luis Obispo Mothers for Peace*, 502 F.Supp. at 411–12; *see FTC v. Dean Foods Co.*, 384 U.S. 597, 603–04, 86 S.Ct. 1738, 1742, 16 L.Ed.2d 802 (1966).

■ The preemptory writ of mandamus has traditionally been used in federal courts to review nonfinal district court orders and is used only in exceptional circumstances. *Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976); *Clorox Corp. v. United States District Court*, 756 F.2d 699, 700 (9th Cir.1985); *United States v. Harper*, 729 F.2d 1216, 1221 (9th Cir.1984). Use of the All Writs Act in connection with agency matters has been even more rare and the scope of relief granted in these cases has been narrow. *See Arrow Transportation Co. v. Southern Railway Co.*,

372 U.S. 658, 671 n. 22, 83 S.Ct. 984, 991 n. 22, 10 L.Ed.2d 52 (1963); *Silverman v. National Labor Relations Board*, 543 F.2d 428, 430 (2d Cir.1976) (per curiam). The circumstances that will justify our interference with nonfinal agency action must be truly extraordinary, for this court's supervisory province as to agencies is not as direct as our supervisory authority over trial courts. *Association of National Advertisers*, 627 F.2d at 1179 (Leventhal, J., concurring). *See Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council, Inc.*, 435 U.S. 519, 555–58, 98 S.Ct. 1197, 1217–19, 55 L.Ed.2d 460 (1978); *Public Power Council*, 674 F.2d at 795 (1982).

■ As petitioners have failed to demonstrate they face any irreparable injury that is not correctable on review of final BPA action, we decline to exercise jurisdiction under the All Writs Act over their interlocutory claim of bias. *See Wisconsin Gas Co. v. Federal Energy Regulatory Commission*, 758 F.2d 669, 674–75 (D.C.Cir. 1985) (per curiam); *In re Cement Antitrust Litigation*, 688 F.2d 1297, 1301 (9th Cir.1982), *aff'd for absence of quorum*, 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983); *accord ALPA*, 750 F.2d at 88 (declining to exercise its jurisdiction under the All Writs Act over the interlocutory claim of bias on the part of the CAB). Petitioners assert that the delay in reaching appellate review of the bias claim will cause them irreparable harm because they have no administrative remedy in the interim. FERC has stated that it will not examine the fairness of BPA's proceedings to revise the ASC methodology. *See* 49 Fed.Reg. 39,-293 (1984). Nevertheless, delaying review until after FERC confirmation and approval will not prevent petitioners from obtaining full and effective relief. If petitioners prevail, the entire ASC methodology proceeding is subject to vacation if necessary, and the court can order refunds for any over-collections by BPA during the period the new methodology was in effect. *Cf. Cities of Anaheim v. FERC*, 723 F.2d 656, 662 (9th Cir.1984). This court may also

make a retroactive adjustment of rates for the purpose of determining the statutory baseline. *See* 16 U.S.C. §§ 839e(c)(1)(A) and 839e(c)(2). By contrast, if we had suspended proceedings or wrongly forced the Administrator to recuse, the entire 1985 rate process would have been disturbed and the DSI's subject to the possibility of judicially-mandated refunds to the IOU's. Petitioners lose nothing by having to await FERC confirmation and approval before pursuing their claim in this court.

The judgment of the district court is AFFIRMED. The action for declaratory and injunctive relief and the petition for mandate filed in this court are DISMISSED.