767 F.2d 631
 CALIFORNIA ENERGY COMMISSION, a State Agency; and Charles
R. Imbrecht and Geoffrey D. Commons, individuals,
Petitioners,
v.
Peter JOHNSON, as Administrator of the Bonneville Power
Administration, Department of Energy; Donald Hodel, as
Secretary of the Department of Energy; Federal Energy
Regulatory Commission; and the United States of America, Respondents.
 No. 83-7962.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 14, 1984.
Decided Aug. 1, 1985.
 
 Jonathan Blees, William M. Chamberlain, Sacramento, Cal., for petitioners.
 William David Sprayberry, Judith A. Bearzi, Vancouver, Wash., J. Richard Baxendale, Portland, Or., for Public Power Council.
 John A. Cameron, Jr., Jack G. Collins, Thomas C. Lee, Kurt R. Casad, BPA Portland, Or., for respondents.
 M. Laurence Popofsky, Eric Redman, Dian M. Grueneich, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., Eric Redman, Heller, Ehrman, White & McAuliffe, Seattle, Wash., Michael C. Dotten, Heller, Ehrman, White & McAuliffe, Portland, Or., for Direct Service Indus.: Customers of BPA:
 Petition for Review of 1983 Rate Determination of the Bonneville Power Administration.
 Before KENNEDY, ALARCON, and FERGUSON, Circuit Judges.
 KENNEDY, Circuit Judge:
 
 
 1
 Petitioners filed this original action seeking review by this court of certain aspects of the Bonneville Power Administration ("BPA") 1983 wholesale power rates, promulgated under authority of the Pacific Northwest Electric Power Planning and Conservation Act (the "Act"), 16 U.S.C. Secs. 839-839(h) (1982).
 
 
 2
 Petitioners are the California Energy Commission ("CEC") and two of its individual members. CEC, a statutory agency responsible for adoption and implementation of California energy policy, forecasts energy needs and certifies construction of power plants in California. Respondents are the United States, the BPA Administrator, the Secretary of the Department of Energy, and the Federal Energy Regulatory Commission (FERC). Several public and private BPA customers have been granted leave to intervene.
 
 
 3
 Respondents move to dismiss this case for lack of jurisdiction.[1] We grant the motion. This court lacks jurisdiction under the Act because the 1983 rates are not yet final. This case, moreover, does not entail extraordinary circumstances that would warrant exercise of our power under the All Writs Act, 28 U.S.C. Sec. 1651(a) (1982).
 
 
 4
 The BPA Administrator filed proposed 1983 wholesale power and transmission rates with FERC on October 3, 1983. BPA requested waiver of FERC's ninety-day advance filing requirement and sought interim approval, enabling the rates to go into effect on November 1, 1983. In an order issued October 26, 1983, FERC granted BPA's request for waiver and granted interim approval of the 1983 wholesale power rates. FERC permitted the rates to go into effect November 1, 1983, on an interim basis, subject to refund with interest, pending FERC final confirmation and approval, or disapproval. Order Granting Interim Approval of Rates in Part, Granting Interventions, Denying Motion for Partial Summary Disposition, and Extending Prior Confirmation of Transmission Rates, 25 FERC (CCH) p 61,140 at 61,376 (October 26, 1983). FERC has yet to give final confirmation and approval to the 1983 rates.
 
 
 5
 CEC challenges the 1983 rate for sale of power to customers outside the Pacific Northwest. In order to understand the nature of CEC's complaint, it is necessary to explore briefly the BPA system.
 
 
 6
 BPA assumes initially that each operating year will be equivalent to the driest year in recorded history. The power that would be generated under such conditions is considered firm power. BPA is obligated to provide firm power, without interruption, to certain classes of customers in the Pacific Northwest. Because no operating year has matched the driest year, BPA has always produced a surplus of power. That surplus is sold on a nonfirm, or interruptible, basis. Nonfirm energy is most plentiful during spill conditions, when BPA has so much excess that it must spill water rather than use it to produce energy. At such times, nonfirm energy is sold at "spill rates."
 
 
 7
 Nonfirm energy may be sold outside the Pacific Northwest when no customer in the region will purchase it at established rates. California is the main purchaser of nonfirm power, which is transported to California via the Pacific Intertie. Approximately two-thirds of the power transported over the Intertie is produced by federal facilities. The remaining one-third is produced by Pacific Northwest utilities and transported over the Intertie pursuant to a contract, styled an Exportable Agreement, between BPA and the utilities. See Central Lincoln Peoples' Utility District v. Johnson, 735 F.2d 1101, 1106-07 (9th Cir.1984) (Central Lincoln II ).
 
 
 8
 CEC alleges that the 1983 nonfirm rates unlawfully discriminate against California ratepayers, and that the rates are based not upon the cost of providing service but with a view toward subsidizing rates charged Pacific Northwest customers. CEC alleges that the rates suppress competition among Pacific Northwest utilities for the California energy market because the nonfederal entities transporting energy over the Intertie all charge the going BPA rate. CEC complains that, under spill conditions, the BPA Administrator retains unbridled discretion to reestablish rates. CEC also alleges that BPA did not properly follow ratemaking procedure because the rates adopted allegedly vary widely from the proposed rates upon which hearings were conducted.
 
 
 9
 The Act grants this court original jurisdiction to review final actions and decisions of the BPA Administrator. 16 U.S.C. Sec. 839f(e)(5); Public Utility Commissioner v. Bonneville Power Administration, 767 F.2d 622 (9th Cir.1985). Among the enumerated final actions are "final rate determinations." 16 U.S.C. Sec. 839f(e)(1)(G) (1982). Rate determinations are deemed final, however, only upon "confirmation and approval" by FERC. 16 U.S.C. Sec. 839f(e)(4)(D) (1982). This case is governed by Central Lincoln II, in which we refused to review 1981 nonregional rates that had not yet received FERC confirmation and approval.
 
 
 10
 The 1983 nonregional rates have received FERC's interim approval but not final confirmation and approval. As in Central Lincoln II, we are without jurisdiction under the Act to review the rates at this time.
 
 
 11
 CEC requests that we exercise our power under the All Writs Act in order to preserve our prospective jurisdiction under the Act. See Public Utility Commissioner v. Bonneville Power Administration, 767 F.2d 622, (9th Cir.1985). Specifically, CEC seeks an injunction against implementation of the 1983 nonfirm rate for sale of power outside the Pacific Northwest during spill conditions. CEC alleges that California ratepayers will be irreparably harmed if judicial review of nonregional spill rates is delayed for FERC confirmation and approval.
 
 
 12
 CEC estimates that the 1983 nonfirm rate to be charged California customers during spill conditions is two and one-half to six times greater than that to be charged Pacific Northwest customers. CEC argues that this discriminatory price will result in irreparable harm because federal regulations providing for refunds with interest upon FERC disapproval of rates require the BPA alone to refund payments. See 18 C.F.R. Sec. 300.20(c) (1984). Because one-third of the power transported over the Intertie is not produced by BPA, CEC predicts that refunds will not be available for one-third of the power sold to California if the 1983 nonregional rates are ultimately disapproved. CEC calculates that nonrefundable overcharges to California customers during spill season will range from $23 to $56 million, depending on water levels.
 
 
 13
 The All Writs Act, 28 U.S.C. Sec. 1651(a), empowers the federal courts to issue writs of mandamus necessary to protect their prospective jurisdiction. See FTC v. Dean Foods Co., 384 U.S. 597, 603, 86 S.Ct. 1738, 1742, 16 L.Ed.2d 802 (1966). In connection with ongoing agency proceedings, this judicial power is limited and is to be used in only the most extreme circumstances. See Arrow Transportation Co. v. Southern Railway Co., 372 U.S. 658, 671 n. 22, 83 S.Ct. 984, 991 n. 22, 10 L.Ed.2d 52 (1963). In an appropriate case, use of the All Writs Act might be available to preserve this court's prospective jurisdiction under the Act. Since we conclude that CEC has failed to substantiate its claim that irreparable injury is likely to occur, we need not decide the difficult question whether congressional provision for FERC interim approval forecloses all judicial review, even under the All Writs Act, prior to FERC confirmation and approval. See Arrow Transportation Co., 372 U.S. at 668, 671 n. 22, 83 S.Ct. at 991 n. 22. This is not an appropriate case, however.
 
 
 14
 CEC's allegations of irreparable harm are too speculative to warrant injunctive relief under the All Writs Act. See Wisconsin Gas Co. v. Federal Energy Regulatory Commission, 758 F.2d 669, 674 (D.C.Cir.1985); Bauman v. United States District Court, 557 F.2d 650, 656-57 (9th Cir.1977). On January 27, 1984, in response to several motions for rehearing, FERC issued a second order regarding the 1983 wholesale power rates. CEC sought rehearing on the same basis that it relies upon now for injunctive relief. FERC denied CEC's request, citing a 1982 memorandum from the Chief of BPA's Contract Management Branch describing the Exportable Agreement between BPA and Pacific Northwest utilities:
 
 
 15
 When a party schedules its apportioned "Exportable Energy" to BPA, such party's energy is combined with all other Exportable Energy, and sold by BPA as Federal energy to California utilities under existing power sales contracts at the lowest rate specified under BPA's Wholesale Nonfirm Energy Rate Schedule. The scheduling party is credited (i.e., paid) for its "sale" of Exportable Energy by BPA at the referenced rate.
 
 
 16
 Order Granting Request for Temporary Interim Rates, Denying Renewed Motion for Partial Summary Disposition, Granting Request for Clarification and Deferring Action on Requests for Hearing, Nos. EF84-2011-002, et al. at 8 (FERC January 27, 1984). FERC observed that "BPA appears to treat all energy sold under the Exportable Agreement as Federal energy sales. Accordingly, contrary to the California claims, these sales would apparently be subject to the same refund provisions in effect for sales of energy generated from Federal facilities." Id. Thus, FERC concluded that CEC's fear of irreparable harm was unfounded.
 
 
 17
 We need not decide whether FERC was correct in its determination that refunds would be available. FERC's assessment does, however, support our conclusion that CEC's claims of irreparable injury are speculative. Even if CEC could show with certainty that refunds would be withheld, moreover, we would be unlikely to grant the requested relief. Our decision in Cities of Anaheim, et al. v. Federal Energy Regulatory Commission, 723 F.2d 656 (9th Cir.1984), a case arising under the Federal Power Act, 16 U.S.C. Sec. 791a, et seq. (1982), demonstrates the extent of our reluctance to review FERC's preliminary disposition of rate filings.
 
 
 18
 Finally, customers are protected by the right to refund with interest, accrued at the prime rate and compounded quarterly. 18 C.F.R. Sec. 35.19a(a)(2). The cities argue that "forced loans" irreparably harm them regardless of subsequent refunds. Even if this is true, it has never been found decisive. In fact, most of the plaintiffs--e.g., the competing carriers in Arrow, the utility plaintiffs, and the customers in cases where no suspension had been ordered--were not protected by refunds, but were still denied judicial review.
 
 
 19
 723 F.2d at 661.
 
 
 20
 The instant petition is just one of many filed with this court, complaining that the system for review of BPA rates is inadequate. BPA charges new wholesale power rates after obtaining FERC's interim approval. As in the case of the 1983 rates, interim approval appears to be granted in haste. FERC then begins the long process leading to final confirmation and approval, or disapproval. With respect to regional rates, FERC's role is limited to financial oversight; FERC review does not extend to rate design or cost allocation. See Central Lincoln II, 735 F.2d at 1110, 1115; 16 U.S.C. Sec. 839e(a)(2). Thus, many issues relating to regional rates are not considered by FERC, but must await FERC confirmation and approval before judicial review is available. By the time this court has jurisdiction under the Act, the challenged rate may already have been supplanted by a new, interim-approved rate, the new rate having received its impetus from the very rate that is being challenged. Nevertheless, petitions for review of nonfinal regional rates are premature.
 
 
 21
 Our normal hesitancy to interfere with ongoing agency proceedings is even more pronounced with respect to BPA nonregional rates because the Act affords special protection to nonregional BPA customers. Central Lincoln II, 735 F.2d at 1113. Section 7(k) provides for an additional hearing in order to allow FERC to determine whether nonregional rates comply with the Bonneville Project Act, the Flood Control Act of 1944, and the Federal Columbia River Transmission System Act. 16 U.S.C. Sec. 839e(k) (1982). The 7(k) hearing subjects nonregional rates to much broader review than regional rates. For example, the Flood Control Act of 1944 requires "sale on fair and reasonable terms and conditions." 16 U.S.C. Sec. 825s (1982).
 
 
 22
 CEC's allegations that the 1983 rates are discriminatory and anticompetitive will be reviewed by FERC in the 7(k) hearing now being conducted. For us to enjoin the 1983 nonregional spill rates at the same time that FERC is conducting a thorough review of those rates, would be an unwarranted intrusion upon the administrative process and an unwise substitution of our judgment for the superior expertise of FERC. We would do so only in the most extraordinary circumstances.
 
 
 23
 We grant the motion to dismiss for lack of jurisdiction because the 1983 nonregional rates have not received FERC confirmation and approval. We decline to grant relief under the All Writs Act because this case does not present extraordinary circumstances warranting disruption of the administrative process.
 
 
 24
 The petition is DISMISSED.
 
 
 
 [1]
 This action was consolidated with numerous other petitions for review of the BPA 1983 wholesale power and transmission rates. Those petitions were voluntarily dismissed pursuant to stipulations by the parties that this court lacked jurisdiction because the 1983 rates were not yet final. The instant case was not subject to stipulation