758 F.2d 669
 244 U.S.App.D.C. 349
 WISCONSIN GAS COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Michigan Consolidated Gas Company, et al., Intervenors.
ANR PIPELINE COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Michigan Consolidated Gas Company, et al., Intervenors.
GREAT LAKES GAS TRANSMISSION COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Michigan Consolidated Gas Company, et al., Intervenors.
TRANSWESTERN PIPELINE COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Michigan Consolidated Gas Company, et al., Intervenors.
MIDWESTERN GAS TRANSMISSION COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Michigan Consolidated Gas Company, et al., Intervenors.
TENNESSEE GAS PIPELINE COMPANY, A DIVISION OF TENNECO INC., Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Michigan Consolidated Gas Company, et al., Intervenors.
CITY GAS COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Michigan Consolidated Gas Company, et al., Intervenors.
MADISON GAS & ELECTRIC COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Michigan Consolidated Gas Company, et al., Intervenors.
WISCONSIN FUEL & LIGHT COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Michigan Consolidated Gas Company, et al., Intervenors.
WISCONSIN NATURAL GAS COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Michigan Consolidated Gas Company, et al., Intervenors.
WISCONSIN POWER & LIGHT COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Michigan Consolidated Gas Company, et al., Intervenors.
WISCONSIN PUBLIC SERVICE CORPORATION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Michigan Consolidated Gas Company, et al., Intervenors.
PANHANDLE EASTERN PIPE LINE COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Michigan Gas Utilities Company, State of Michigan, et al.,
Michigan Consolidated Gas Company, Consumers Power
Company, Pan-Alberta Gas Ltd., et al.,
Intervenors.
TRUNKLINE GAS COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Michigan Gas Utilities Company, State of Michigan, et al.,
Michigan Consolidated Gas Company, Consumers Power
Company, Pan-Alberta Gas Ltd., et al.,
Intervenors.
MIGC, INC., Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Michigan Consolidated Gas Company, Consumers Power Company,
Pan-Alberta Gas Ltd., et al., Intervenors.
TEXAS EASTERN TRANSMISSION CORPORATION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Michigan Consolidated Gas Company, Consumers Power Company,
Pan-Alberta Gas Ltd., et al., Intervenors.
ARKANSAS LOUISIANA GAS COMPANY, A DIVISION OF ARKLA, INC., Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Pan-Alberta Gas Ltd., et al., Consumers Power Company,
Michigan Consolidated Gas Company, Intervenors.
TRANSCONTINENTAL GAS PIPE LINE CORPORATION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Pan-Alberta Gas Ltd., et al., Public Service Commission of
the State of New York, Public Service Electric and Gas
Company, Kansas State Corporation Commission, Consolidated
Gas Transmission Corporation, Washington Gas Light Company,
Intervenors.
ALGONQUIN GAS TRANSMISSION COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Pan-Alberta Gas Ltd., et al., Consumers Power Company,
Michigan Consolidated Gas Company, Northern
Illinois Gas Company, Intervenors.
TEXAS GAS TRANSMISSION CORPORATION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Consumers Power Company, Pan-Alberta Gas Ltd., et al.,
Northern Illinois Gas Company, Natural Gas
Pipeline Company of America, Intervenors.
PACIFIC INTERSTATE OFFSHORE COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Consumers Power Company, Northern Illinois Gas Company,
Michigan Consolidated Gas Company, Pacific
Lighting Gas Supply Company, et al.,
Pan-Alberta Gas Ltd., et al.,
Intervenors.
CASCADE NATURAL GAS CORPORATION, Northwest Natural Gas
Company, Washington Natural Gas Company, Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Consumers Power Company, Pan-Alberta Gas Ltd., et al.,
Northern Illinois Gas Company, Michigan
Consolidated Gas Company, Intervenors.
ARKANSAS LOUISIANA GAS CO., A DIVISION OF ARKLA, INC., Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Pacific Gas and Electric Company, et al., Intervenors.
TRANSWESTERN PIPELINE COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Pan-Alberta Gas Ltd., et al., Intervenors.
MIGC, INC., Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
ARKANSAS LOUISIANA GAS COMPANY, A DIVISION OF ARKLA, INC., Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
 Nos. 84-1358 to 84-1360, 84-1364, 84-1407, 84-1408, 84-1413
to 84-1418, 84- 1433, 84-1434, 84-1441, 84-1446, 84-1463,
84-1470, 84-1474, 84-1487, 84-1489, 84-1490, 84-1556,
84-1580, 84-1623 and 85-1015.
 United States Court of Appeals,
District of Columbia Circuit.
 Order Dec. 18, 1984.
Opinion March 29, 1985.
 
 Platt W. Davis, III, Washington, D.C., was on motion for partial stay filed by petitioner Ark. La. Gas Co.
 David L. Huard, Norman A. Pedersen, Los Angeles, Cal., and Roger B. Coven, Washington, D.C., were on motion for stay filed by petitioner MIGC, Inc.
 Bolivar C. Andrews, Cheryl Foley, James W. McCartney, Judy M. Johnson, Houston, Tex., and David T. Andril, Washington, D.C., were on motion for partial stay filed by petitioner Transwestern Pipeline Co.
 Barbara J. Weller, Deputy Sol. and A. Karen Hill, Atty., F.E.R.C., Washington, D.C., were on response of F.E.R.C. in opposition to motions for stay.
 Before WRIGHT,* MIKVA and BORK, Circuit Judges.
 Opinion Per Curiam.
 
 
 1
 PER CURIAM.
 
 
 2
 The petitioners, MIGC, Inc. ("MIGC"), Arkansas Louisiana Gas Company ("Arkla"), and Transwestern Pipeline Company ("Transwestern"), have moved this court to stay the operation and effect of three orders issued by the Federal Energy Regulatory Commission (the "Commission"). This court denied the motions for stay by an order dated December 18, 1984.[1] Petitioners have made allegations of irreparable injury which are speculative, unsubstantiated and of a nature which clearly does not warrant the issuance of a stay. The filing of these motions, therefore, has been an abuse of the judicial process and has wasted the time and resources of this court. We are issuing this opinion for the guidance of the bar because many essentially frivolous stay applications are being filed. Counsel know or may easily learn the requirements for a stay. Applications that do not even arguably meet those requirements, as the present ones do not, should not be filed.
 
 I.
 
 3
 The petitioners are interstate pipelines which sell natural gas under contracts, tariffs, and certificates approved by the Commission. These contracts and tariffs, and those of other interstate pipelines, often contain minimum commodity bill and minimum take provisions. A minimum commodity bill requires a pipeline customer to pay the full commodity charge for a minimum volume of gas, whether or not the customer purchases that amount of gas. A minimum take provision requires a pipeline customer to take physically a certain amount of gas and does not offer a pipeline customer an option to pay for gas not taken. On August 25, 1983, the Commission issued a Notice of Proposed Rulemaking[2] pursuant to which it proposed to adopt a regulation that would eliminate variable costs from natural gas pipeline minimum commodity bill provisions. Following the submission of comments, the Commission concluded that minimum commodity bills enable a pipeline to recover purchased gas costs in cases where the pipeline does not actually incur such costs. Additionally, the Commission found that if a customer must pay for the gas, whether or not it actually takes the gas, then the customer will not seek lower-priced gas supplies but will continue to purchase gas from the same supplier. To alleviate these problems, the Commission issued Order No. 380[3] which declares inoperative any minimum bills which allow recovery of purchased gas costs from a customer who does not take the gas.[4] Several parties filed applications with the Commission for a rehearing and for a stay of the Order. These applications also sought clarification of the Order with respect to whether it applies to minimum take provisions. On July 30, 1984, the Commission issued Order No. 380-A[5] in which it granted a stay with respect to the application of the final rule to minimum take provisions, and denied the petitions for rehearing.[6] Several parties then petitioned this court for review of the Orders.[7] ANR Pipeline Company and Great Lakes Gas Transmission Company moved this court for a stay of the Orders. These parties argued that they would suffer irreparable harm in the absence of a stay because if their customers did not meet their minimum bill obligations, then the pipelines would incur increased liability under the take-or-pay provisions[8] in their contracts with producers of natural gas. A motions panel of this court denied the motion on the ground that the petitioners had not demonstrated that in the absence of a stay they would suffer irreparable harm.[9]
 
 
 4
 On October 24, 1984, the Commission issued Order No. 380-C[10] which affirmed the application of Order No. 380 to minimum take provisions. Petitioner MIGC then moved this court to stay the effect of these Orders to the extent that they apply to the minimum bill and minimum take provisions in its contracts and tariffs. Petitioners Arkla and Transwestern have moved this court to stay the operation and effect of these Orders only to the extent that they apply to minimum take provisions.
 
 II.
 
 5
 The factors to be considered in determining whether a stay is warranted are: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d 921, 925 (D.C.Cir.1958). We believe that analysis of the second factor disposes of these motions and, therefore, address only whether the petitioners have demonstrated that in the absence of a stay, they will suffer irreparable harm.
 
 
 6
 "The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Sampson v. Murray, 415 U.S. 61, 88, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974). Although the concept of irreparable harm does not readily lend itself to definition, the courts have developed several well known and indisputable principles to guide them in the determination of whether this requirement has been met.
 
 
 7
 First, the injury must be both certain and great; it must be actual and not theoretical. Injunctive relief "will not be granted against something merely feared as liable to occur at some indefinite time," Connecticut v. Massachusetts, 282 U.S. 660, 674, 51 S.Ct. 286, 291, 75 L.Ed. 602 (1931); the party seeking injunctive relief must show that "[t]he injury complained of [is] of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm." Ashland Oil, Inc. v. FTC, 409 F.Supp. 297, 307 (D.D.C.), aff'd, 548 F.2d 977 (D.C.Cir.1976) (citations and internal quotations omitted).
 
 
 8
 It is also well settled that economic loss does not, in and of itself, constitute irreparable harm. As this court has noted:
 
 
 9
 The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.
 
 
 10
 Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d at 925. Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business. See Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 n. 2 (D.C.Cir.1977).
 
 
 11
 Implicit in each of these principles is the further requirement that the movant substantiate the claim that irreparable injury is "likely" to occur. See Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d at 843 n. 3. Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur. The movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future. Further, the movant must show that the alleged harm will directly result from the action which the movant seeks to enjoin.
 
 III.
 
 12
 Despite these well-settled principles, the petitioners have premised their motions for stay upon unsubstantiated and speculative allegations of recoverable economic injury.
 
 
 13
 The petitioners' first allegation of irreparable injury is that if their customers are not contractually obligated to purchase a minimum amount of gas, then the petitioners cannot ensure that they will be able to purchase gas on a reliable basis, and their suppliers will therefore probably refuse to contract with them for the sale of gas. In addition to the fact that it would be extremely difficult to prove that petitioners' alleged loss of supply would be a result of the Commission's Orders, none of the petitioners has provided any evidence that a single supplier has stated an intention to cease contracting, or even that any supplier believes that any of the petitioners is now an unreliable purchaser. Therefore, this allegation is purely hypothetical and will not be considered by this court.
 
 
 14
 Arkla and Transwestern argue next, that if their customers do not purchase a minimum volume of gas, then they may be forced to reduce their takes from suppliers and thus may be exposed to increased take-or-pay liability. In addition, Transwestern alleges that it may be exposed to liability for breach of the minimum take provisions in its contracts. Basically, each of the petitioners is arguing that if its customers reduce their takes, and if it is unable to find other customers to replace the reduced takes, and if this results in increased take-or-pay liability which the petitioner is unable to recover during the make-up period, then it will suffer irreparable injury in that it will not be able to recover the money spent on the prepayments for gas.
 
 
 15
 Even if petitioners could prove that this purely hypothetical chain of events would occur, this type of recoverable economic harm does not warrant the issuance of a stay. There are several possible means by which the petitioners could recover these prepayments. First, it is as likely as not that the pipelines will recover the payments during the make-up period. Second, neither petitioner has presented any evidence that any pipeline has ever forfeited a prepayment. Indeed, in those cases where make-up periods have expired, the parties have renegotiated their contracts so that the payment would not be forfeited.[11] Finally, the Commission has stated that the Orders do not prohibit recovery of take-or-pay costs,[12] and that it will review each case on its own facts to determine whether any liability for breach of contract is recoverable in the pipeline's rates.[13] Thus, neither party has shown that the alleged loss is unrecoverable, and neither petitioner has alleged that in the interim they will be forced out of business by the loss. Instead, they have merely speculated that they will suffer a financial loss. This is the type of "mere economic loss" which will not support a finding of irreparable injury. See Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d at 925.
 
 
 16
 The petitioners have also failed to show that the first step in this scenario is likely to occur. To prove that the injury is likely to occur, petitioners would at a minimum have to show that their customers are going radically to reduce their takes, and that the pipelines cannot mitigate this loss by selling the gas to other pipeline customers. Neither petitioner alleges that its customers have reduced their takes to such an extent that it has incurred increased take-or-pay liability or that this liability is presently a real possibility. In fact, Transwestern concedes that one of its customers is now taking more than it was obligated to purchase under its minimum take contractual provision.[14] Further, neither petitioner alleges that it has unsuccessfully attempted to find other purchasers to alleviate the possible reduced takes.
 
 
 17
 Finally, the allegations made by petitioners are so speculative and hypothetical that it would be difficult to conclude that irreparable injury would occur even if the allegations were supported by evidence. The fact that petitioners have not attempted to provide any substantiation is a clear abuse of this court's time and resources.
 
 
 18
 Arkla and Transwestern further argue that they will suffer from wide swings in takes as a result of the Commission Orders. Transwestern alleges that it does not have the facilities to serve as a swing supplier and thus will suffer irreparable injury. Arkla does not state what harm it will incur from these wide swings. We find these allegations to be the most specious. They are totally unsubstantiated in the face of the common knowledge that customer takes will depend on innumerable variables including weather conditions, overall demand and the price of alternate fuels. To ask this court to find that wide swings in demand will injure the petitioners, without any evidence to support such a finding, is to ask this court to act on pure conjecture. This we refuse to do.
 
 
 19
 Petitioners have not demonstrated that they will suffer irreparable injury in the absence of a stay. Indeed, the showings made fall so far short that these petitions should not have been filed. The motions for stays are denied.
 
 
 
 *
 Circuit Judge Wright took no part in the disposition of this motion
 
 
 [1]
 Order, Wisconsin Gas Co. v. FERC, No. 84-1358 (D.C.Cir. Dec. 18, 1984)
 
 
 [2]
 48 Fed.Reg. 39,238 (1983)
 
 
 [3]
 Final Rule, Elimination of Variable Costs from Certain Natural Gas Pipeline Minimum Commodity Bill Provisions, 27 F.E.R.C. p 61,318 (1984), 49 Fed.Reg. 22,778 (1984)
 
 
 [4]
 Order No. 380 provides in relevant part:
 Any pipeline rate schedule governing the sale of natural gas shall be inoperative and of no effect at law to the extent it provides for recovery of purchased gas costs for gas not taken by the buyer.
 
 
 [49]
 Fed.Reg. 22,778, 22,792 (1984)
 
 
 [5]
 Order Denying Rehearing and Granting in Part Applications for Stay, 28 F.E.R.C. p 61,175 (1984), 49 Fed.Reg. 31,259 (1984)
 
 
 [6]
 The Commission decided to reconsider the minimum take question because the Notice of Proposed Rulemaking and Order No. 380 specifically addressed the issue of gas "not taken" by a customer and pursuant to a minimum take provision, the customer must actually take the gas
 
 
 [7]
 Wisconsin Gas Co. v. FERC, No. 84-1358 (D.C.Cir. filed July 30, 1984)
 
 
 [8]
 Take-or-pay provisions require a pipeline to take a specified percentage of the gas which it is contractually obligated to purchase, or to pay for such gas. These provisions differ from minimum bills in several respects. First, minimum bills usually must be paid on a monthly basis, whereas take-or-pay obligations accrue on an annual basis. Second, the take-or-pay provisions often permit the purchaser to "make-up" deficient purchases over a period of years. This allows the purchaser to take the excess above his minimum contractual requirement, at a later time, to the extent that he has already paid for the gas. Finally, the pipeline is entitled to treat prudently incurred take-or-pay prepayment as an investment which may be included in a general rate increase filing under section 4 of the Natural Gas Act, 15 U.S.C. Sec. 717c (1982)
 
 
 [9]
 See Order, Wisconsin Gas Co. v. FERC, No. 84-1358 (D.C.Cir. Sept. 19, 1984)
 
 
 [10]
 Order on Rehearing Reaffirming Application of Rule to Minimum Take Provisions and Denying Requests for Waiver, 29 F.E.R.C. p 61,077 (1984), 49 Fed.Reg. 43,625 (1984)
 
 
 [11]
 See, e.g., Natural Gas Supply Ass'n, Statements on Take-or-Pay Obligations, Reported in the 1983 Annual Reports of Interstate Pipelines, reprinted in Response of Federal Energy Regulatory Commission in Opposition to Stay of Commission Order Nos. 380 and 380-A (Nos. 84-1359, 84-1360), Wisconsin Gas Co. v. FERC, No. 84-1358 (D.C.Cir. filed July 30, 1984)
 
 
 [12]
 See Order No. 380-A, 49 Fed.Reg. 31,259, 31,262 (1984)
 
 
 [13]
 See Order No. 380-C, 49 Fed.Reg. 43,625, 43,633 (1984)
 
 
 [14]
 Motion of Transwestern Pipeline Company for Partial Stay at 19, Wisconsin Gas Co. v. FERC, No. 84-1358 (D.C.Cir. filed July 30, 1984)