Tony AVIRGAN, et al., Plaintiffs,

and

Village Voice, Plaintiff–Intervenor,

v.

John HULL, et al., Defendants.

Misc. No. 87–252.

United States District Court,
District of Columbia.

Dec. 9, 1987.

See also, D.C., 118 F.R.D. 257.

Stephen M. Kohn, Thomas C. Green, Sharp, Green & Lankford, Mark H. Tuhoey, III, Pierson, Ball & Dowd, Washington, D.C., for defendants.

Daniel P. Sheehan, The Christic Institute, Washington, D.C., for plaintiffs.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

■ This miscellaneous matter comes once again before the Court on third-party deponent Glenn A. Robinette's motion for a protective order, which was earlier stayed for further briefing on the issue of good cause, and on plaintiffs' subsequent motion for a court-supervised deposition.[1] The novel issue presented by this motion is whether Robinette has sufficiently demonstrated good cause to warrant the issuance of a protective order prohibiting the attendance of the press and other members of the public at his deposition, which plaintiffs seek to take in Washington, D.C. as part of their discovery in the underlying action *Avirgan v. Hull*, Civil Action No. 86–1114 (S.D.Fla.). For the reasons set forth below, the motion for a protective order is denied.

■ Federal Rule of Civil Procedure 26(c) provides that for good cause a court may fashion a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." This standard balances the governmental and first amendment interests at stake when a party seeks to disseminate information obtained through pretrial discovery. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37, 104 S.Ct. 2199, 2209, 81 L.Ed.2d 17 (1984)[2]; *Anderson v. Cryovac*, 805 F.2d 1, 7 (1st Cir.1986). The specific focus before this Court, which has "sub-

---

1. Plaintiffs also request this Court to issue an order covering "all future depositions to be taken in this case in the Washington, D.C. area in this highly-charged civil litigation, so as to avoid the need for a deposition-by-deposition disposition of Rule 26(c) Motions filed either by the defendants or the plaintiffs." Plaintiffs' Motion for the Issuance of an Order of This Court To Conduct the Deposition of Glenn A. Robinette in the Presence of This Court with the Disciplined Attendance of the Public and the Professional Media Pursuant to the Parties' May 6, 1987 Stipulation ("Plaintiffs' Motion"), at 2. As the determination of good cause requires consideration of the circumstances regarding the deposition of the individual defendant, plaintiff's motion is appropriately denied despite the burden it might place on the courts.

That motion raises two other issues requiring comment. First, the "May 6, 1987" stipulation referred to by plaintiffs is entitled to little weight on the precise issue before the Court. Robinette was not a party to that stipulation, and thus in fairness he cannot be bound by it.

Second, although the Court at oral argument inquired whether the parties had discussed the idea of a court-supervised deposition, it is apparent in light of the subsequent briefing on the motion that it is the release of the information to the press and the subsequent publicity and not the possible actions of the reporters at the deposition itself that Robinette asserts will injure him. Court supervision, unfortunately, would not resolve the central issue presented by the motion.

2. In the context of deciding in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), that protective orders occupy a "unique position" in relation to the First Amendment, the Supreme Court observed that "pretrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law ... and, *in general,* they are conducted in private as a matter of modern practice." *Id.* at 33, 104 S.Ct. at 2207–08 (emphasis added). The rationale for this presumption against dis-

stantial latitude to fashion protective orders," *Seattle Times*, 467 U.S. at 36, 104 S.Ct. at 2209, therefore, is not on the first amendment issue, but rather on whether Robinette has shown good cause for a blanket protective order.

■ As explained in this Court's July 31, 1987 Memorandum Opinion, the party seeking a protective order clearly bears the burden of proving its necessity. Memorandum Opinion ("Mem.Op."), 118 F.R.D. 257, 261–262; *Cipollone v. Liggett Group, Inc.*, 106 F.R.D. 573, 583 (D.N.J.1985). To show good cause, a movant for a protective order must articulate specific facts showing "clearly defined and serious injury" resulting from the discovery sought, *Cipollone*, 106 F.R.D. at 583, *Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 479 (S.D.N.Y. 1982),[3] and cannot rely on merely conclusory statements. *Anderson*, 805 F.2d at 7. The Court proceeds, therefore, to examine Robinette's submissions attempting to show good cause.

■ Robinette claims that his privacy and reputation will be injured without the protective order. He avers that the Christic Institute, attorneys for plaintiffs in this case, have distributed press releases "rid-

dled with false statements and accusations" in anticipation of Robinette's deposition. Defendant's Supplemental Brief in Support of Motion for Protective Order, at Robinette Affidavit, para. 6. In addition, he states that "media attention generally, and specifically, these false allegations that I have misrepresented myself as an attorney, and that I participated in criminal activities, such as breaking and entering, have resulted in letters and telephone calls harassing and threatening me. In addition, my business has suffered as a result of clients who are reluctant to have me handle their work while I am the focus of media attention." *Id.* at Affidavit, para. 8. He denies that he had brought this press attention on himself, stating he has "never solicited interviews with the press." *Id.* para. 16. Robinette sees no alternative to protecting his interests other than completely barring public and press attendance at his deposition. *Id.* at 4–5.[4]

Plaintiffs claim, on the other hand, that the media attention Robinette has received is due to his own conduct and does not result from the Christic Institute's actions in scheduling and inviting the press to his deposition. Plaintiffs' Opposition to Depo-

---

closure is that "[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action." *Id.* The Court found, however, that the good cause standard of Rule 26 coupled with the trial court's broad discretion to fashion appropriate protective orders satisfied the substantial governmental interest in preventing abuse of the discovery process. *Id.* at 34–35, 104 S.Ct. at 2208.

**3.** Contrary to Robinette's suggestion, *Koster v. Chase Manhattan Bank*, 93 F.R.D. 471 (S.D.N.Y. 1982), though pre-*Seattle Times v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), provides directly relevant analysis of the good cause standard. The *Koster* court clearly recognized the emerging conflict in the circuits on the issue of what standard should govern public dissemination of discovery materials (a split that led to the Supreme Court's decision in *Seattle Times* approving the good cause standard, *see* Mem.Op. at 260–261) but declined to involve itself in the fray. *Id.* at 478. After setting out the three competing standards (*In re Halkin*, 598 F.2d 176 (D.C.Cir.1979), *In re San Juan Star Co.*, 662 F.2d 108 (1st Cir.1981), and good cause), the court concluded that it "need not resolve the questions whether the good cause standard is constitutionally deficient and,

if so, what standard should be used," because it found that movants had not met even the least demanding good cause standard. *Id.* at 480. *Koster*, therefore, is authoritative on the issue of good cause. Indeed, it is particularly useful here as its facts are quite similar to the instant motion.

**4.** Counsel for certain defendants also suggests in his motion that the deposition should be barred or sealed because "[s]everal of the defendants in this action are either subjects or targets of a criminal investigation currently being conducted by Independent Counsel Lawrence Walsh" and that press coverage of Robinette's deposition might jeopardize their right to a fair trial. In light of the enormous publicity already generated by the congressional hearings on the Iran/Contra affair, and the other judicial proceedings related to the potential indictments, any potential prejudice from further press coverage generated by Robinette's deposition is too speculative to alone constitute good cause. *See Associated Press v. United States District Court for the Central District of California*, 705 F.2d 1143 (9th Cir.1983). Notably, Robinette himself does not raise this argument.

nent's Supplemental Brief in Support of Motion for Protective Order ("Pls.Opp.") at 3. They argue further that in consideration of the public attention on the congressional hearings on the Iran/Contra Affair, at which Robinette testified, "the publicity generated by a deposition will not significantly cause any damage to Mr. Robinette which would outweigh the right of press coverage of an individual in the public spotlight." *Id.* at 4. Plaintiffs also assert that any injury to Robinette's reputation and invasion of his privacy would not be attributable to their actions but rather to "the distasteful nature of his activities and conduct." *Id.* at 6.

The Supreme Court in *Seattle Times* emphasized that the trial court has broad discretion in determining whether a movant has shown good cause:

> To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.... The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.

*Id.* at 467 U.S. at 36, 104 S.Ct. at 2209.[5]

In the instant case, Robinette has focused on annoyance and harassment he attributes to plaintiffs' efforts to publicize this case, but has not persuaded the Court that these allegations constitute good cause to close the scheduled deposition. Although Robinette's concerns are more weighty because he is not a party to the underlying action, it is impossible to determine the appropriate weight to give those allegations about past occurrences without knowing what specific information will be revealed at Robinette's deposition that has not already been the subject of public and press scrutiny. To allow the protective order in advance absent such a showing would run afoul of the balance of first amendment interests in Rule 26 firmly approved by the Supreme Court in *Seattle Times.* Indeed, ordinarily, a deposition is a public document "freely open to inspection after it is filed with the clerk," 8 Wright & Miller, Federal Practice and Procedure: Civil, § 2042, p. 298, and the presumption inherent in Rule 26(c) is that the discovery should be open. *Koster,* 93 F.R.D. at 481 n. 20.

The District Court in *Koster* reached a similar conclusion in denying a protective order to prevent dissemination to the press and non-parties of information obtained during discovery in that case. The court concluded that even assuming that the injuries alleged by the defendant "will reoccur and that they are sufficiently 'defined and serious,' other factors militate against issuing the protective order." *Id.* at 481.[6] The

---

**5.** While good cause is necessarily a case by case determination, it is worth noting that the facts before the trial court in *Seattle Times,* which "illustrate the concerns that justifiably may prompt a court to issue a protective order," *id.* 467 U.S. at 36, 104 S.Ct. at 2209, were much more serious than those alleged here.

In *Seattle Times,* the respondent organization submitted several affidavits detailing a series of letters and telephone calls defaming the organization, its members, and its leader "including several that threatened physical harm to those associated with the [organization]." 467 U.S. at 26, 104 S.Ct. at 2204. The affidavits also described incidents at the organization's headquarters involving "attacks, threats, and assaults directed at [the organization's] members by anonymous individuals and groups." *Id.* The trial court found this showing "persuasive." *Id.* at 27, 104 S.Ct. at 2204. The Washington State Supreme Court and the United States Supreme

Court both affirmed the protective order. *Id.* at 28, 104 S.Ct. at 2205.

**6.** Much like deponent alleges in the instant motion, the defendant in *Koster v. Chase Manhattan Bank,* 93 F.R.D. 471 (S.D.N.Y.1982), alleged that plaintiff had generated "widespread and, at times, somewhat sensationalized coverage" about the case, in which she claimed that defendant, a former vice-president of the bank where she had been employed, had forced her to engage in a sexual relationship with him and abused her and interfered with her career when she terminated the relationship.

As a result of plaintiff's attempt to publicize the case, the defendant bank claimed that it had suffered embarrassment and injury to reputation, and the vice president claimed injury to his business and personal life. Specifically, the vice-president claimed that his consulting business had experienced a decline; two of his clients had expressed a concern about maintain-

court first addressed the breadth of the proposed order, which would have prohibited dissemination of discovery materials "that are as yet nonexistent." *Id.* Although the court recognized that particular circumstances might warrant an order restricting dissemination of discovery materials before the court even knew the contents of those materials, it found that no such exigencies warranted such a sweeping order on the facts before it. The goal of prohibiting the disclosure of information that will embarrass or otherwise injure the defendants could be achieved using less drastic alternatives, without "shutting the barn door after the horses had left." *Id.* at 481. For example, the court observed that defendants could move to prohibit dissemination of specific deposition testimony; dissemination pending a court ruling could be prevented through agreement or court order.

In noting that denial of the protective order properly preserved the presumption of openness in the federal rules, *id.* at 481 n. 19, the *Koster* court observed that "before placing the inconvenience of applying to the Court for modification of the order on the plaintiff, the Court should at least be convinced that most information likely to be disclosed during discovery will be worthy of protection. In this case, we have some reservations in this regard." *Id.*

Even assuming that the Christic Institute has been responsible for disseminating false information about Robinette, (an alleging that clearly cannot be decided here),[7] and that the threatening calls and letters and the decline in his business are attributable directly to the actions of plaintiffs and their counsel, this does not constitute good cause for closing his deposition before it has even occurred. Notably, Judge King (to whom the underlying action is assigned) has recognized that the significant public interest in the pending litigation in his court requires that some traditional judicial restrictions on the proceedings be relaxed. Specifically, he has suspended the applicability of Local Rule 21 to the case, allowing the involved attorneys to make extra-judicial statements to the press. *See Avirgan,* Order of Nov. 27, 1987, at 1 and Transcript of Oral Ruling attached to Letter from Lewis Pitts to the Court, dated November 16, 1987.

In reaching this conclusion, the Court is well aware that deponent may, as he is entitled to, pursue his other options to seek to prevent dissemination of the information revealed at the deposition. He may, under Rule 30(d), move to terminate or limit the scope of the deposition. (The Court would expect that at least in this instance plaintiffs' and deponent's interests in avoiding this possibility coincide as such a motion would disrupt discovery and require bringing the matter once again to court.) He could also make a motion (as he apparently intends to do) to this Court or the Florida court, which is most familiar with the underlying action,[8] to seal the deposition tran-

---

ing a business relationship with him because of the charges; two potential clients had stayed further dealings with him; an appointment to a teaching position had been delayed; he suffered from "heightened blood pressure" and insomnia; his family relationships became strained; and he received harassing and threatening phone calls. The defendants alleged that these injuries would reoccur if plaintiff were permitted to disseminate the fruits of discovery. The court denied the protective order.

**7.** Robinette claims specifically about two documents: the press release dated July 2, 1987 and a memorandum dated June 29, 1987 from Peter Dale Scott to Jack Blum. The Christic Institute claims that as to the first, it was merely reprinting information that had been revealed in Robinette's testimony before the Joint Select Committee and other information reported in an article by the *Washington Post.* As to the Scott memorandum, the Christic Institute claims that these materials were not distributed by the Christic Institute, nor were these materials ever included in any of its press releases. Pls.Opp. at 5. Robinette insists in his reply, however, that he was told by reporters "who sent him those documents that they had received those documents from the Christic Institute. Mr. Robinette is willing to so testify *in camera.*"

**8.** Questions of relevancy will inevitably be involved in such a good cause determination. While this Court is not sufficiently familiar with the facts of this case to determine at this stage how Robinette's testimony fits within the scope of the recent discovery order entered by Chief Judge King, at the same time, the Court cannot accept the suggestion by counsel for certain defendants that *none* of Robinette's testimony will be relevant. Opposition of Certain Served

script under Rule 26(c). In both cases, he will still have to demonstrate good cause, but such a determination would be made possible by the existence of specific facts or a record from the conduct of the deposition itself.

See also, D.C., 118 F.R.D. 252.

After carefully reviewing the record, particularly the affidavit submitted by the movant, the Court finds in this unique case that, while the attendance of the press at a deposition is certainly an unorthodox practice, to prohibit it in advance of a good cause showing would be an improper balancing of the interests protected by Rule 26. Accordingly, third-party deponent's motion be and it hereby is denied. The deposition shall be held at a mutually convenient time and location.

IT IS SO ORDERED.

Defendants to Plaintiffs' Motion for a Court Supervised Deposition of Glenn A. Robinette, at Attachment 1. *See Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 425 (1st Cir.1961). Plaintiffs contend that "Mr. Robinette's testimony would fall precisely within the time frame and subject matter of Judge King's Order as it now stands." Plaintiffs' Opposition to Deponent's Supplemental Brief in Support of Motion for Protective Order, at n. 1.