FEDERAL ELECTION COMMISSION,
Plaintiff,

v.

GOPAC, INC., Defendant.

Civ. A. No. 94–0828–LFO.

United States District Court,
District of Columbia.

Dec. 23, 1994.

Lawrence M. Noble, Gen. Counsel, Richard B. Bader, Associate Gen. Counsel, Stephen E. Hershkowitz, Asst. Gen. Counsel, Franciszka A. Monarski, Atty., Washington, DC, for plaintiff.

Peter Derry, Pyne & Derry, Chevy Chase, MD, for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

### I.

Plaintiff, Federal Election Commission, is the independent agency of the United States government with exclusive jurisdiction to initiate civil actions in the United States district courts to obtain judicial enforcement of the Federal Election Campaign Act (the "Act"). 2 U.S.C. §§ 431–455. It seeks (1) a declaratory judgment that defendant, GOPAC Inc., violated the Act; and (2) an order imposing civil penalties against defendant for those violations and compelling defendant to file reports required by the Act. This case is before the Court on defendant's motion to dismiss.

The complaint alleges that since 1989, defendant GOPAC has been a non-profit corporation, whose purpose "is to elect Republican candidates to the United States House of Representatives." Complaint ¶ 4. From June 1989 to August 1990, GOPAC distributed nearly 800,000 copies of a six-page communication entitled "Campaign For Fair Elections." Complaint ¶¶ 25–26. The com-

munication allegedly "advocat[ed] the defeat of Democratic incumbents in the United States House of Representatives and ... the election of Republican candidates to the United States House of Representatives during the 1990 and 1992 elections." Complaint ¶ 19. The communication included: (1) a four-page letter over the signature of Congressman Newt Gingrich, "General Chairman, GOPAC"; (2) a "CITIZEN'S VETO" addressed to the Members of the 101st Congress opposing their Franking Privilege, and (3) a separate solicitation for contributions. Complaint ¶ 20; FEC Ex. 1.

The complaint quoted portions of the letter as follows:

[T]he Democrats in Congress have set themselves up as the highest authority in the land—above the will of the American people who elected Ronald Reagan and then George Bush to be their president. The only way to clear up the mess and restore honesty and decency to Congress is to break the Democrats' stranglehold on power ...

· · · · ·

Your VETO is the first step in our two-step plan to gain a Republican majority in the House of Representatives by 1992.

The Campaign for Fair Elections is a project of GOPAC, the Republican committee dedicated to building a Republican majority at all levels of government.

Complaint ¶ 21 (omissions in complaint).

The complaint also quoted the letter as stating,

[w]ith your help, our Campaign for Fair Elections will defeat or seriously weaken a large number of Democrats in 1990. And that will give us the momentum we need to sweep in a majority of Republicans in 1992. . . . Our plan is ambitious. We're aiming to overturn a Democrat reign that's lasted 35 years.

Complaint ¶ 22 (alteration and omission in complaint). The complaint further noted that the letter requested contributions to the "Campaign for Fair Elections" and that it concluded as follows: "[w]ith your help, we can break the liberal Democrats' iron-grip on the House of Representatives and build a

new Republican majority." Complaint ¶ 23 (alteration in complaint). In addition, the complaint noted that the solicitation reply form asked the addressee to check a box indicating, "YES! I want to help break the Democrat's iron grip on Congress by building a new Republican majority in the House of Representatives." Complaint ¶ 24.

According to the complaint, GOPAC expended $280,812 on the "Campaign for Fair Elections" communication. Complaint ¶¶ 25–26. In response to the solicitation, GOPAC received contributions totalling $275,710. Complaint ¶¶ 29–30.

On May 8, 1991, GOPAC registered prospectively with the Commission as a federal political committee pursuant to 2 U.S.C. § 431(4). Complaint ¶ 8. After registration, GOPAC distributed one solicitation letter dated July 30, 1991 (FEC Ex. 2) and another dated August 30, 1991 (FEC Ex. 3). The Complaint alleges that neither letter disclosed that GOPAC had paid for it. Complaint ¶¶ 44–45.

The complaint charged defendant with three statutory violations: (1) violation of 2 U.S.C. § 433(a) by failing to register as a "political committee" between June 1989 and August 1990, the period during which it was distributing its "Campaign For Fair Elections" communication; (2) violation of 2 U.S.C. § 434(a) by failing to file periodic reports of its receipts and disbursements with the Commission during the same time period; and (3) violation of 2 U.S.C. § 441d by failing to state in the solicitation letters dated July 30, 1991 and August 30, 1991 that GOPAC had paid for them. *See also* 11 C.F.R. § 110.11(a)(1)(iv)(A).

II.

The issue raised by the first two counts of the Commission's complaint is whether GOPAC was a "political committee" within the meaning of the Act when it distributed its Campaign For Fair Elections communication. The Act provides that a "political committee" must register with the Commission and report its receipts and disbursements. 2 U.S.C. §§ 433, 434. The general definitions section of the Act defines a "political commit-

tee" as "any committee, club, association, or other group of persons which receives *contributions* aggregating in excess of $1,000 during a calendar year or which makes *expenditures* aggregating in excess of $1,000 during a calendar year." *Id.* § 431(4)(A) (emphasis added).

The general definitions section of the Act also defines the terms "contribution" and "expenditure." Under the Act, "[t]he term 'contribution' includes any gift, subscription, loan, advance, or deposit of money or anything of value made by any person *for the purpose of influencing any election for Federal office.*" 2 U.S.C. § 431(8)(A)(i) (emphasis added). The Act also defines the term "expenditure" to include "any purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made by any person *for the purpose of influencing any election for Federal office.*" 2 U.S.C. § 431(9)(A)(i) (emphasis added).

In *Buckley v. Valeo*,[1] the seminal case on the constitutionality of the Act, the Supreme Court expressed its concern that the phrase "for the purpose of influencing any election for Federal office" in the definitions of "expenditure" and "contribution" has the "potential for encompassing both issue discussion and advocacy of a political result." *Id.*, 424 U.S. at 79, 96 S.Ct. at 663. Elaborating on the *Buckley* Court's concern, our Court of Appeals later noted:

> On its face, the statute might seem to include as political committees ... issue-oriented groups, lobbying organizations, religious bodies, and communal associations of all sorts. In *Buckley*, however, the Supreme Court explicitly recognized the potentially vague and overbroad character of the 'political committee' definition in the context of [the Act's] disclosure requirements....

*Federal Election Commission v. Machinists Non–Partisan Political League*, 655 F.2d 380, 391 (D.C.Cir.1981) (footnote and citations omitted).

In response to its concern about the potential for vagueness and overbreadth of the term "political committee," the Supreme

Court narrowed the meaning of the term as follows:

> The general requirement that 'political committees' and candidates disclose their expenditures could raise ... vagueness problems, for 'political committee' is defined only in terms of amount of annual 'contributions' and 'expenditures,' and could be interpreted to reach groups engaged purely in issue discussion. The lower courts have construed the words 'political committee' more narrowly. *To fulfill the purpose of the Act they need only encompass organizations that are under the control of a candidate or the major purpose of which is the nomination or election of a candidate.* Expenditures of candidates and of "political committees" so construed can be assumed to fall within the core area sought to be addressed by Congress. They are, by definition, campaign related.

*Id.*, 424 U.S. at 79, 96 S.Ct. at 663 (footnotes omitted) (emphasis added). Thus, the *Buckley* Court signaled that the term "political committee" as used in the Act, and the responsibilities of an organization so categorized, should be limited to those "organizations that are under the control of a candidate [for federal office] or the major purpose of which is the nomination or election of a candidate [for federal office]." *Id.* Our Court of Appeals reiterated this definition and explained that

> [t]he *Buckley* Court felt that a more expansive definition of 'political committee' would have been constitutionally dangerous, since once any group of Americans is found to be a 'political committee' it must then submit to an elaborate panoply of FEC regulations requiring the filing of dozens of forms, the disclosing of various activities, and the limiting of the group's freedom of political action to make expenditures or contributions.

*Machinists Non–Partisan*, 655 F.2d at 391–92.

The quintessential example of a political committee as that term is defined by *Buckley* is, of course, an organization whose major

---

**1.** 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

purpose is to nominate or elect a particular named candidate for federal office. Also reasonably included in the definition of "political committee" is an organization whose major purpose is to elect a slate of named federal candidates. The instant complaint alleges only that "GOPAC's purpose is to elect Republican candidates to the United States House of Representatives." Complaint ¶ 4 (emphasis added). Strictly construed, this paragraph of the complaint appears to allege that an organization whose major purpose at a given point in time is to elect whatever *unidentified* federal candidates it may select in the future constitutes an organization whose major purpose is to elect a candidate to federal office within the meaning of the statute, and hence, is an organization that should have registered. In *Machinists Non-Partisan*, our Court of Appeals ruled that organizations whose goal was to draft Senator Kennedy to run for President were not "political committees" before November 1979 because Senator Kennedy had not yet become an actual candidate for President. Thus, proof of the generalized allegation in paragraph 4 of the instant complaint, without more, would probably not establish the Commission's claim that GOPAC is a "political committee" under the narrow definition established by the Supreme Court in *Buckley*. *See Machinists Non-Partisan*, 655 F.2d at 382 (D.C.Cir.1981).

 However, it is well established that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *See e.g., Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994) (citations omitted). In the circumstances here, if the Commission were able to establish that, at a particular point in time before GOPAC registered and began reporting, its major objective was, in fact, to elect a *particular federal* candidate or *particular federal* candidates, then it should follow that GOPAC was, at that time, a political committee obligated to register and report. The complaint can fairly be construed to permit proof of such an ultimate fact although it does not specifically allege it; therefore, the complaint cannot be dismissed at this time.[2]

In reaching this conclusion I have carefully considered defendant's contention that (1) the term "political committee" requires an organization to have made at least $1,000 in "expenditures" or received at least $1,000 in "contributions"; and (2) that in order for money spent to be considered an "expenditure" or for money received to be considered a "contribution" within the meaning of those terms as interpreted by the courts, the communication for which the money is spent must "expressly advocate" the election or defeat of a clearly identified candidate (i.e. the communication itself must contain words such as "vote for," "vote against," "elect," "support," "cast your ballot for," "Smith for Congress," "defeat," or "reject."). *See e.g. Federal Election Commission v. Massachusetts Citizens For Life*, 479 U.S. 238, 249, 107 S.Ct. 616, 623, 93 L.Ed.2d 539 (1986) (citing *Buckley*, 424 U.S. at 44, n. 52, 96 S.Ct. at 647, n. 52). Based on this theory of the law, GOPAC argues that the Commission must ultimately demonstrate that the Campaign for Fair Elections communication itself "expressly advocated" the election or defeat of particular federal candidates. Thus, according to GOPAC, the motion to dismiss should be granted because the Campaign For Fair Elections communication itself does not contain "express advocacy" as that phrase has been defined by controlling case law.

 However, *Buckley* authoritatively establishes that *any* payment of $1,000 or more by an organization whose major purpose has been determined to be the nomination or election of an identified candidate for federal office (as distinguished from an organization which has some other major purpose) is, "by definition, campaign related" and hence, constitutes an "expenditure" by a

---

2. The complaint focused on the "major purpose" rather than the "control of a candidate" element of the *Buckley* definition. Neither the allegation in paragraph 4 of the complaint that "GOPAC's purpose is to elect Republican candidates to the United States House of Representatives" nor any other allegation in plaintiff's pleadings can fairly be construed as claiming that defendant was "under the control of a candidate" for federal office before it registered.

"political committee." *Buckley*, 424 U.S. at 79, 96 S.Ct. at 663. Therefore, there is no occasion to decide whether the Campaign for Fair Elections communication itself "expressly advocates" the election or defeat of identified federal candidates. Here, the controlling relevant question is not whether the *communication* "expressly advocates" the election or defeat of such candidates for federal office, but rather whether, at the times in question, the *organization*'s "major purpose ... [was] the nomination or election" of an identified candidate or candidates for federal office. *Id.* That is a factual question, and the complaint, fairly construed, permits proof by the parties focused on that question. It cannot be resolved on the pleadings. Accordingly, the accompanying Order denies the defendant's motion to dismiss Counts 1 and 2, and schedules a status conference to organize further proceedings which should focus on resolving this factual issue.

### III.

Defendant has moved for dismissal of Count 3 on the grounds that the Commission failed to follow its own procedures and that, as a result, GOPAC was denied adequate notification of the Count 3 allegations. This issue remains under advisement.