FEDERAL ELECTION COMMISSION,
Plaintiff,

v.

GOPAC, INC., Defendant.

Civ. A. No. 94–0828 (LFO).

United States District Court,
District of Columbia.

Sept. 6, 1995.

Stephen E. Hershkowitz and Franciszka A. Monarski, General Counsel's Office, Federal Election Commission, Washington, DC, for plaintiff.

Peter E. Derry, Chevy Chase, MD, for defendant.

*MEMORANDUM OPINION*

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on defendant's motion for a preliminary injunction. As motions judge, the undersigned considered the matter and heard oral argument in the absence of Judge Oberdorfer, to whom the case is assigned.

## I. BACKGROUND

The Federal Election Commission instituted this lawsuit against defendant, GOPAC, Inc., alleging that between June 1989 and May 8, 1991, GOPAC violated the Federal Election Campaign Act by failing to register and report as a political committee while allegedly raising and expending funds for the purpose of influencing federal elections. *See* 2 U.S.C. §§ 433(a), 434(a). GOPAC moved to dismiss for failure to state a claim, contending that during the relevant time period, its activities were restricted to supporting state and local candidates and that it did not advocate the election or defeat of any federal candidates.

On December 23, 1994, Judge Oberdorfer denied defendant's motion to dismiss, ruling that "if the Commission were able to establish that, at a particular point in time before GOPAC registered and began reporting, its major objective was, in fact, to elect a *particular federal* candidate or *particular federal* candidates, then it should follow that GOPAC was, at that time, a political committee obligated to register and report." *Federal Election Commission v. GOPAC, Inc.,* 871 F.Supp. 1466, 1470 (D.D.C.1994) (emphasis in original). Accordingly, informal discovery commenced and continues on the issue of GOPAC's major purposes in 1989 and 1990.

During discovery, the Commission requested that GOPAC produce lists of names, current addresses and telephone numbers of the 200 individuals who made the largest contributions in response to a specific GOPAC solicitation and of all of GOPAC's "Charter Members" during the 1989–1990 election cycle.[1] GOPAC declined to produce this infor-

---

1. "Charter Members" are those contributors who contribute $10,000 or more annually. *See* FEC

Opposition at 5.

mation. In some of the documents that were produced by GOPAC, however, the Commission found names of some contributors and notified defendant of that fact. During the week of August 14, 1995, the FEC telephoned approximately 50 individual contributors, actually speaking with fewer than ten. According to the FEC, each contributor with whom it spoke was informed that the Commission was calling in connection with this lawsuit, that cooperation with the FEC was entirely voluntary, that the contributor did not have to answer any questions, and that any information the contributor provided might become public in this litigation. *See* Declaration of Franciszka A. Monarski ("Monarski Decl.") ¶ 19. The purpose of these telephone conversations was to ascertain whether the contributors "thought or were told by GOPAC, that the purpose of GOPAC was to facilitate the election of candidates to federal office." *Id.* at ¶ 18.

Believing that such communications intrude into the privacy and associational rights of its donors, that the questions asked of contributors are irrelevant to the litigation as framed by the Court, and that they are designed solely to harass GOPAC contributors and to deter them from association with GOPAC, defendant moved for a preliminary injunction to prohibit the Commission from making any further contacts with GOPAC contributors.

## II. REQUEST FOR PRELIMINARY INJUNCTION

■ This Circuit has adopted a four-part test to determine when a preliminary injunction is appropriate. A party seeking an injunction must demonstrate (1) that it is likely to prevail on the merits; (2) that it will suffer irreparable harm absent the grant of injunctive relief; (3) that an injunction would not substantially impair the rights of the nonmovant or other interested parties; and (4) that an injunction would be in the public interest, or at least would not be adverse to the public interest. *Sea Containers Ltd. v. Stena AB,* 890 F.2d 1205, 1208 (D.C.Cir.

1989). This four-part test is a flexible one: injunctive relief may be granted with either a high likelihood of success and some injury, or vice versa. *Cuomo v. United States Nuclear Regulatory Comm'n,* 772 F.2d 972, 974 (D.C.Cir.1985). "Plaintiffs are not required to prevail on each of these factors; rather the factors should be viewed as a continuum—more of one factor compensating for less of another." *Brown v. Artery Organization, Inc.,* 654 F.Supp. 1106, 1114 (D.D.C. 1987).

■ While it has denominated its application a motion for preliminary injunction, what defendant really seeks is a protective order under Rule 26(c) of the Federal Rules of Civil Procedure. Rule 26(c) recognizes the Court's authority, for good cause shown, to enter any order "which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense...." Rule 26(c), Fed.R.Civ.P. Thus, the merits as to which GOPAC must demonstrate a likelihood of success on this motion relate to its claim that the informal discovery being pursued by the Commission is irrelevant, oppressive or otherwise inappropriate, rather than to the substantive claims and defenses underlying the lawsuit. To obtain relief, therefore, GOPAC must "articulate specific facts showing '*clearly defined and serious injury*' resulting from the discovery sought ..., and cannot rely on merely conclusory statements." *Avirgan v. Hull,* 118 F.R.D. 252, 254 (D.D.C.1987) (emphasis added); *see* Rule 26(c), Fed.R.Civ.P. In this case, then, the likelihood of success prong and the irreparable harm prong of the test for preliminary injunction are somewhat similar.

■ GOPAC first argues that the telephone calls to GOPAC contributors present an "unjustified intrusion into the privacy and associational rights of GOPAC's donors," Def.'s Mem. at 3, and that they threaten to "chill the [donors'] rights of expression and association." Request for Expedited Consideration at 1. Because this argument is based on the rights of GOPAC's donors, it raises an initial question of GOPAC's standing.[2] The

---

**2.** The normal standing requirements apply in discovery disputes. *See Laxalt v. McClatchy,* 809   F.2d 885, 891 (D.C.Cir.1987).

traditional rule of standing is that a party must assert its own legal rights and interests and cannot rest its claim to relief on the legal rights and interests of third parties. *See* 13 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3531.9 (1984). Yet this is precisely what GOPAC has claimed: the privacy and associational rights of its contributors.

■ In claiming that it is an appropriate party to assert its contributors' rights, GOPAC relies on the Supreme Court's decisions in *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), and *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). The Court concludes, however, that these cases are inapposite, as they are premised upon a representative relationship between the organization and its members, a relationship in which the organization "and its members are in every practical sense identical." *NAACP v. Alabama*, 357 U.S. at 459, 78 S.Ct. at 1170. The fact is, however, that GOPAC "is not a traditional voluntary membership organization such as a trade association, for it has no members at all." *Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. at 342, 97 S.Ct. at 2440. GOPAC's contributors, even those denominated as Charter Members, are not "members" as that word is traditionally used. GOPAC uses the words "contributors," "donors," and "members" interchangeably and has provided no evidence that "Charter Members" have any of the traditional membership benefits, privileges or other attributes of membership, not even a membership card. Nothing in the record suggests a relationship between GOPAC and its contributors of a kind or of a degree that would implicate this line of cases.

GOPAC also relies on *Brown v. Socialist Workers '74 Campaign Committee*, 459 U.S. 87, 103 S.Ct. 416, 74 L.Ed.2d 250 (1982), both to bolster its standing argument and for the more substantive proposition that the Commission's inquiry into the identity of Charter Members and other contributors violates the privacy and associational rights of such persons and that such violations may cause suffi-

ciently irreparable harm to merit injunctive relief. The *Socialist Workers* case is not on point. There, compelled disclosure of the names of members belonging to the Socialist Workers Party was found to violate the First Amendment because such persons, if identified, would be subject to threats, harassment or reprisals. *See Brown v. Socialist Workers '74 Campaign Committee*, 459 U.S. at 102–03, 103 S.Ct. at 425–26. Here, disclosure of the names of GOPAC's Charter Members is not an issue. The names of some Charter Members were found in documents provided to the Commission by GOPAC, and a list of 150 of GOPAC's largest contributors during 1987 to 1993 apparently is publicly available on the Internet. *See* FEC Exhibit 15. Furthermore, to state the obvious, no comparable stigma attaches to association with Speaker Gingrich or to GOPAC as once attached to members of the Socialist Workers Party. GOPAC does not have standing to assert the privacy and associational rights of its contributors.

■ In a related argument, but one that seeks to avoid the standing problems of the first, GOPAC claims that donors will be reluctant to contribute, or may even refrain from contributing, to GOPAC if, in doing so, they will be subjected to telephone calls from the Federal Election Commission. Consequently, as the lifeline of any political action committee is fundraising, GOPAC argues that potential diminished financial support of GOPAC is a cognizable interest in the discovery addressed to GOPAC's members. Under the case law, however, this argument may be viable only if GOPAC can "articulate specific facts showing 'clearly defined and serious injury'" to it. *Avirgan v. Hull*, 118 F.R.D. at 254. GOPAC has not made such a showing.

■ The declaration of Lisa Nelson, Executive Director of GOPAC, states only that "I *believe* that their willingness to continue to be a contributor has been adversely affected, because any question concerning political motivation has a chilling effect." Declaration of Lisa Nelson ("Nelson Decl.") at 2 (emphasis added). This statement of injury is conclusory and without factual support. By contrast, the declaration submitted by the Commission

contains facts showing that every contributor with whom it spoke voluntarily answered the questions asked and that no one complained of harassment. Monarski Decl. ¶ 19. During oral argument, defendant's counsel acknowledged that if GOPAC had been able to locate any donors willing to state that the Commission's phone calls made them less likely than they otherwise would be to give money to GOPAC, it would have provided declarations from such people. "The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray,* 415 U.S. 61, 88, 94 S.Ct. 937, 951, 39 L.Ed.2d 166 (1974). Such injury "must be both certain and great; it must be actual and not theoretical." *Wisconsin Gas Co. v. Federal Energy Regulatory Commission,* 758 F.2d 669, 674 (D.C.Cir.1985). Defendant has failed to meet this test. Thus, with respect to its own legal rights and interests, while it may have standing, GOPAC has failed to show irreparable harm.

■ GOPAC's argument on the merits is that its donors' reasons for giving money to GOPAC are irrelevant to the instant action. Because the ultimate issue in this case, as defined by Judge Oberdorfer in view of the statutory mandate, is GOPAC's "major purpose" in 1989 and 1990, defendant maintains that the "FEC has no factual or legal foundation for questioning contributors about their intent in making donations to GOPAC five and six years ago." Def.'s Mem. at 5. GOPAC argues that the only relevant issue is what the organization did or did not do, not what the donors intended in making contributions.

The Commission concedes that the purpose of its telephone calls to contributors has been to ascertain the contributors' understanding of what their contributions to GOPAC would be used for, whether they thought that GOPAC was supporting federal candidates, and whether they contributed to GOPAC so that GOPAC could influence the election of Republicans to the House of Representatives. Monarski Decl. ¶ 18. It points out, however, that in the discovery conducted thus far, GOPAC's former Chairman and Executive Director have testified that Charter Members were contacted and solicited orally by GOPAC and were invited to and attended various seminars and meetings with then-GOPAC Chairman Newt Gingrich and other federal officeholders. FEC's Opposition at 10–11. During these meetings, GOPAC's plans and activities to elect Republicans were discussed and Charter Members were solicited for advice on national issues and on how best to utilize those issues in campaigns. *Id.* From these facts, the Commission argues that the Charter Members are direct witnesses to oral statements made to them about the organization's activities and purposes and thus may have relevant information. FEC's Opposition at 11.

In civil litigation, parties may conduct discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Rule 26(b)(1), Fed.R.Civ.P. Furthermore, "[t]he information sought need not be admissible at the trial if the information sought *appears reasonably calculated to lead to the discovery of admissible evidence." Id.* (emphasis added). The information sought by the Commission appears "reasonably calculated to lead to the discovery of admissible evidence." As the FEC points out, while written material may set out an organization's purposes and objectives, few organizations operate on paper alone, and the full scope of its purposes may not be reflected in publicly available documents. Here, major contributors were contacted and solicited orally, were asked for their advice, were invited to seminars and meetings, and were made to feel a part of the organization in an interactive way. Indeed, defendant's counsel conceded at oral argument that what these contributors were told is relevant to the inquiry into GOPAC's "major purpose." Since the threshold for discoverability is only that the information sought "appears reasonably calculated to lead to the discovery of admissible evidence," Rule 26(b)(1), Fed.R.Civ.P., the Court cannot conclude that defendant has a likelihood of success in demonstrating that a protective order should issue.

■ Finally, defendant argues that a preliminary injunction is in the public interest. It relies on the interests of the public, includ-

ing its contributors, in privacy and freedom of association. GOPAC argues that if the Commission is allowed to telephone contributors to political action committees, inevitably such communications will adversely affect the willingness of citizens to continue contributing to and associating with such committees "because any question concerning political motivation has a chilling effect." Nelson Decl. at 2.

 The Court concludes that the public interest in this case is best served by denying the motion for a preliminary injunction. Significantly, there is no basis in defendant's representations to this Court for not giving effect to the very purpose of our discovery rules, namely, to promote a "fair contest with the basic issues and facts disclosed to the fullest practicable extent. Only strong public policies weigh against disclosure." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). On the Commission's part, it has a statutory duty to ensure that the federal election campaign laws are observed with probity.

### III. CONCLUSION

Defendant is not likely to succeed on the merits of articulating "specific facts showing 'clearly defined and serious injury' resulting from the discovery sought." *Avirgan v. Hull*, 118 F.R.D. at 254. Nor has the defendant demonstrated irreparable harm or satisfied the other factors relevant to whether it should be granted injunctive relief. Therefore, defendant's motion for a preliminary injunction is DENIED and an appropriate Order shall be issued on this date.

### ORDER

This matter came before the Court for argument on Defendant's Motion for Preliminary Injunction on August 30, 1995. Upon consideration of the memorandum in support of Defendant's motion, Plaintiff's Opposition to Defendant's Motion for Preliminary Injunction, and the argument presented in open Court by counsel for Plaintiff and for Defendant, and for the reasons stated in the accompanying Memorandum Opinion, it is this 6th day of September, 1995, hereby

ORDERED that Defendant's Motion for Preliminary Injunction be and hereby is DENIED.

SO ORDERED.